# DAVID K. BERTAN
ATTORNEY AT LAW
41 EAST 11TH STREET, 11TH FLOOR
NEW YORK, NEW YORK 10003

(718) 742-1688
E-MAIL: DBERTAN@YAHOO.COM

April 21, 2022

**<u>Via ECF</u>**

Hon. Alvin K. Hellerstein, United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

    Re:    USA v. Eric Grant
            Docket No. 20-Cr-631 (AKH)

Dear Judge Hellerstein:

      There comes a point in a person's life when they realize things need to change. Their lifestyle, their actions, all have led them to an inflection point where the path they travel needs to shift. Mr. Grant has reached that inflection point. He is 47 years old, has spent the last 16 months in a Covid lockdown in the MDC, and is ready to change his life's trajectory. By pleading guilty to a violation of 21 USC § 841 (b)(1)(B), he has accepted responsibility for his conduct, expresses remorse for what he's done, and wants to move forward on a different path.

      Mr. Grant was originally charged with a violation of 21 USC §841 (b)(1)(A). On October 10, 2021, Mr. Grant acknowledged his participation in a narcotics conspiracy that involved between 2.8 and 8.4 kilograms of crack cocaine, and accepted full responsibility for his conduct. Sentencing is now set for May 3, 2022.

**The Sentencing Guidelines and the Plea Agreement**

A conviction under 21 USC § 841 (b)(1)(B) carries a mandatory minimum 5-year sentence. Under the terms of the plea agreement, Mr. Grant agreed that the base offense level for his conduct was 34 (USSG 2D1.1 (c)(3)). Mr. Grant accepted responsibility for his conduct, warranting a 3-level deduction. (USSG §3E1.1(a and b). His applicable guidelines offense level is 31. With 3 criminal history points, Mr. Grant is in criminal history category II. As a result, his guidelines sentencing range is 121 to 151 months[1].

Mr. Grant was born in 1975 in Brooklyn, New York. When he was 9, his father died from cancer at the young age of 62. Mr. Grant was "devastated" at his father's death, and had grief counseling to help him work through his loss. His mother is still alive. Mr. Grant has an older brother, and an older sister. After his father died, Mr. Grant and his sister were raised by his mother.

At the time of his arrest, and for a number of years prior, Mr. Grant was in a relationship with Karen Wheeler. While they are not married, they have been together for 20 years. 18 years ago, they had a child, but sadly the child died soon after it was born. They have no other children.

Mr. Grant was previously married to Lashonda Mack, but they have no children.

Mr. Grant left school in the 10th grade. He previously worked as a porter at a nursing home, but was laid off when the Covid pandemic began. He also worked as a laborer, and a self-employed painter.

Mr. Grant is in good physical condition, with the exception of herniated discs.

**The Appropriate Sentence**

In order to impose a fair and just sentence, the sentencing court must consider the factors set forth in 18 USC § 3553 (a)(1) and (2). Under the first section, the court must consider the nature and circumstances of the offense, and the defendant's history and characteristics.

---

[1] Probation agrees with the calculation set forth in the plea agreement. PSR, ¶¶ 26-42.

Mr. Grant does not question that the offense is serious. He admitted to participating in a narcotics conspiracy that distributed crack cocaine in Harlem. While there is little about the activity that mitigates in Mr. Grant's favor, this factor is not the only factor for the court to consider, and there is more to Mr. Grant that should be considered. Given Mr. Grant's own history and characteristics, a sentence below the advisory guideline range is appropriate.

Mink Jenkins writes that she has known Eric since he was a child. He worked for her at her businesses, and hired him to paint her home in Orange County, New York. He also performed handyman chores for her and her family. Ms. Jenkins writes that Mr. Grant "exemplified honesty and integrity".

Jonae Goodwin considers Mr. Grant to be an uncle. He is one of the best people she ever met, and she feels lucky to have known him. Ms. Goodwin knows Mr. Grant as a giving, kind, and open-hearted person, who makes people feel better about themselves. Ms. Goodwin has known Mr. Grant for 10 years: he worked as a porter in her mother's buildings in New York City. Mr. Grant spoke with her mother, telling her he wants to "get his life together"; Mr. Grant turned out to be one of the best workers, never missing work.

Jill Bair-Bey, Ms. Goodwin's mother, also mentions that Mr. Grant was a dedicated porter, and was respectful to everyone he met. In light of his exemplary character, Ms. Bair-Bey considers him family. It is worth noting that both Ms. Goodwin and Ms. Bair-Bey view Mr. Grant as a member of their family.

Mr. Joseph Harris also views Mr. Grant as a family member. Mr. Harris and Mr. Grant connected via Mr. Grant's sister; they've known each other for over 15 years. Mr. Harris considers Mr. Grant a cherished and close friend, a loving family man, who is always willing to help out. Mr. Harris notes the pride Mr. Grant shows when he's helping his family, painting, or working with neighborhood youths. Mr. Grant's incarceration has had a negative effect on the neighborhood, as Mr. Grant is unable to inspire the local kids and help them boost morale.

Donesha Crum has been friends with Mr. Grant for over twenty years, and writes to provide this Court with her perspective on him. Ms. Crum has watched Mr. Grant help the elderly, work with youth sports, give money to young children for haircuts, and otherwise be a helping hand in the community. Ms. Crum also writes that Mr. Grant has been supportive of her and her family, between painting

homes, and doing repairs. Ms. Crum believes that Mr. Grant has the potential to do better.

Tashana Provet also follows the theme of Mr. Grant's dedication to his community. She has seen him helping elderly residents with errands, carrying groceries, and even just keeping them company while they'd be waiting for their transportation. She saw him engaging the local youths, playing games, talking with them, and encouraging them to stay in school. According to Ms. Provet, Mr. Grant "made the people in the community feel safe and welcomed with his acts of service."

Ms. Provet writes that people go through challenges in their lives; the result that counts is whether they can overcome and learn from these challenges to become a better person. Ms. Provet believes Mr. Grant has done precisely that, and will continue to be better.

Ms. Jackson, Mr. Grant's older sister, considers him her best friend. She is heartbroken at his circumstances, knowing that he is upset and sad about what he's done. Ms. Jackson echoes the sentiments of others regarding Mr. Grant as family oriented, loving, and willing to help others; she also knows how talented he is as a handyman. Ms. Jackson understands Mr. Grant has not made the best choices in life, but he does have the strong support of his family and friends.

Mr. Grant's history is apparent from the Pre-Sentence Report. What this Court can learn from the foregoing letters is that Mr. Grant is a valued member of his family and his community. Based on these letters, Mr. Grant has the potential to be rehabilitated, and to become a more productive member of society: his supporters are unanimous in their praise of his dedication to his family and friends. He has skills that he can use to support himself, and he has the love and support of his community to help keep him on the straight and narrow path. Clearly, his "characteristics" show that he is worthy of a sentence well-below the advisory guidelines.

## The Advisory Guidelines

Under 18 USC § 3553 (2), this Court must also consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, to provide deterrence, to protect the public from further crimes of the defendant, to provide the defendant with any needed rehabilitative services, and, where appropriate, to avoid unwarranted sentencing disparity.

At the outset, there is a mandatory minimum sentence in this case. Mr. Grant understands that he faces a mandatory minimum sentence of at least 60 months. That sentence, in light of Mr. Grant's admitted participation in this case, would adequately reflect the seriousness of the offense, and would promote respect for the law. 5 years in jail is a serious and substantial period of incarceration, and is not viewed lightly. It shows how the criminal justice system how seriously the criminal justice system considers narcotics cases.

Deterrence is similarly served by a 5 year sentence. The idea of specific deterrence is eminently satisfied with such a term of imprisonment: Mr. Grant is paying for his wrongful actions with 5 years of his life. In addition, anyone considering involvement in narcotics conspiracies will be deterred by the thought of a minimum 5 year sentence for their crime.

A 5 year sentence will also protect the public from any possible crimes by Mr. Grant. He will be isolated from society for 5 years, will be on supervised release for years afterwards, and has expressed a strong desire to continue working at Riverside Nursing home as a porter. He wants to change his life.

With regard to rehabilitation, Mr. Grant has stated he wants to return to legitimate work. He has an OSHA certification, he clearly has skills as a painter and handyman, and has the ability and the will to work at a legitimate job, staying away from the life that led him into this case.

As a final note, Mr. Grant will be the first in this case to be sentenced. Given his involvement in the conspiracy, his age, and his background, a sentence of 5 years would set an appropriate benchmark for the rest of the defendants who are to be sentenced. 5 years, for Mr. Grant's conduct, is a fair sentence and provides a solid basis for calculating the proper punishment for co-defendants involved in this case.

Mr. Grant has had 16 months to consider the path he wants to follow. He has endured the spread of Covid throughout MDC, the lockdowns, the loss of basic privileges such as regular showers, commissary, and family visits, and the fear of catching a deadly virus, and now recognizes the consequences of the choices he's made in the past.

Mr. Grant is 47. He has already spent over a year in jail on this case, and years in jail on his previous conviction. He recognizes he needs to change his path, work with what he knows best, and move forward to become a law-abiding citizen.

His dedication to his community, his family, and his friends shows through in the letters attached: he knows it is time for him to live up to the potential everyone else knows he has. A sentence of 60 months, below the advisory guideline range, is sufficient, but not greater than necessary, to provide adequate punishment for Mr. Grant.

                                              Very truly yours,

                                              David K. Bertan, Esq.

cc: AUSA Andrew Li (via ECF)