

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 26, 2022

**BY ECF**

The Honorable Alvin K. Hellerstein
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York  10007

>　　Re:　 **United States** v. **Eric Grant**, S1 20 Cr. 631 (AKH)

Dear Judge Hellerstein:

　　While on probation for assaulting his girlfriend and pulling a knife on the responding officer, defendant Eric Grant participated in a drug crew that controlled a three-block territory in Harlem.  For this conduct, Grant now awaits sentencing for conspiracy to distribute and possess with intent to distribute at least 28 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).  The parties and the Probation Office agree that the applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.") is 121 to 151 months' imprisonment.  For the reasons set forth below, the Government believes that a sentence below this range would be sufficient to serve the purposes of sentencing.

**I.　　Offense Conduct**

　　On November 24, 2020, a grand jury returned an indictment charging Grant and thirteen co-defendants with conspiracy to distribute and possess with intent to distribute 280 grams and more of cocaine base (crack cocaine), in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A).[1]  The indictment was based on a more-than-one-year investigation by the New York City Police Department ("NYPD") and United States Department of Homeland Security, Homeland Security Investigations ("HSI") centered on co-defendant Kenneth Spearman.  Through a wide range of investigative tools — including controlled purchases, physical surveillance, premises searches, car trackers, and Title III intercepts of two phones, including Spearman's phone — the investigation

---

[1] One co-defendant, Cameron Francis, was also charged with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951 and 2, and brandishing a firearm, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and 2.  A fifteenth defendant, Nathaniel Croskey, was added in Superseding Indictment S1 20 Cr. 631, which charged Croskey with participating in the crack cocaine conspiracy, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1).

revealed a drug trafficking organization (the "Spearman DTO"), led by Spearman, that controlled the three-block area of Seventh Avenue, from approximately 120th Street to 123rd Street, in Harlem.  (PSR ¶ 7 (page 5).)[2]

The Spearman DTO enforced its control over its territory with violence and the threat of violence.  (PSR ¶ 8.)  For example, the Spearman DTO devised a system to ensure that only its drugs were sold in its territory:  The DTO would monitor, and regularly change, the color of the capsules in which it sold crack cocaine (*e.g.*, red or yellow or green).  (PSR ¶ 8.)  As described on phone intercepts in the investigation, a dealer ("Smelly") selling in the Spearman DTO's territory used the wrong capsule color — thereby revealing that he was not selling the DTO's drugs.  (PSR ¶ 20).  Co-defendant Seldon Clark, an enforcer for the Spearman DTO, responded by beating "Smelly" up.  (PSR ¶ 20.)  On another occasion, a drug dealer who made unauthorized sales in the DTO's territory was held up at gunpoint by members of the DTO.  (PSR ¶ 8).  On yet another occasion, an individual was lured into buying a gun and drugs from a member of the Spearman DTO, only to be robbed at gunpoint of his money.  (PSR ¶ 8.)

Perhaps the most vivid example of the violence of the Spearman DTO is an intercepted call between Spearman and his son Lavelle Maitland, a co-defendant in this case.  Maitland, who appeared to have been drinking and was in a near-hysterical state, told his father, Spearman, that "some left field shit happened."  When Spearman asked his son to explain, Maitland replied: "What's bound to happen?  When you in the field by yourself, and you ain't got no soldiers, and you ain't got no type of setup [PH], and you ain't got no protégé, you ain't got no type . . . ." Maitland went on to tell his father:  "I got two hundred (200) for you, my n[----]. I got two hundred (200) for you, right now.  I mean, towards what you gave me . . . ."  Later that night, Maitland sent a text message to Spearman that read:  "They didn't take everything" and, a few hours later, followed up with another text message that read:  "I shoulda copped a grip."  In these calls and text messages, Maitland told Spearman that he had been robbed ("What's bound to happen?  When . . . you ain't got no soldiers") and regretted not carrying a firearm ("I should copped a grip").  But, in a striking demonstration of the DTO's cold priorities, Maitland still assured his father that he would pay the $200 that he owed for drugs ("I got two hundred (200) for you . . . towards what you gave me").

\*       \*       \*

Grant served as a mid-level member of the Spearman DTO.  (PSR ¶ 18.)  On multiple occasions in September and November 2020, law enforcement agents observed Grant conducting hand-to-hand narcotics sales and handing cash to Spearman.  (PSR ¶ 18.)  Spearman was also intercepted discussing, with an unindicted co-conspirator, Grant's need to see Spearman to obtain additional drugs to sell.  (PSR ¶ 18.)

---

[2] "PSR" refers to the Presentence Investigation Report revised January 10, 2022.  Due to a numbering error, the PSR jumps from paragraph 12 to paragraph 6 on page 5 of the PSR.

## II.    Plea and Applicable Guidelines Range

On October 20, 2021,[3] Grant pleaded guilty, pursuant to a plea agreement, to the lesser-included offense of conspiracy to distribute and possess with intent to distribute 28 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

In their plea agreement, the parties stipulated to a conspiracy drug weight of at least 2.8 kilograms but less than 8.4 kilograms of crack cocaine, which yields a base offense level of 34. After accounting for acceptance of responsibility, the parties calculated an applicable offense level of 31.  The parties further agreed that Grant's criminal history category is II and his resulting Guidelines range is 121 to 151 months' imprisonment, with a statutory mandatory minimum of 60 months.  The Probation Office concurs with this calculation.  (PSR ¶¶ 27–36, 42, 72–73).

The Government notes that if the conspiracy drug weight of at least 2.8 kilograms were treated as powder cocaine rather than crack cocaine, Grant's base offense level would be 26 (rather than 34), his applicable offense level would be 23 (rather than 31), and his resulting Guidelines range would be 51 to 63 months' imprisonment, with a statutory mandatory minimum of 60 months.  *See* U.S.S.G. §§ 2D1.1(a)(5) and 2D1.1(c)(7), ch. 5, pt. A.

## III.   Discussion

### A.  Applicable Law

Although the Supreme Court held in *United States* v. *Booker* that the Guidelines are no longer mandatory, the Court instructed that district courts must still "consult" the Guidelines and "take them into account" when sentencing.  543 U.S. 220, 264 (2005).  Accordingly, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall* v. *United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in 18 U.S.C. § 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." *See Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)    to afford adequate deterrence to criminal conduct;

---

[3] The PSR incorrectly reports a plea date of October 10, 2021.  (PSR ¶ 8.)

      (C)    to protect the public from further crimes of the defendant; and

      (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

**B.  A Below-Guidelines Sentence Is Appropriate**

The Government submits that a sentence below the Guidelines range of 121 to 151 months' imprisonment is sufficient in this case to reflect the seriousness of Grant's conduct, promote respect for the law, account for Grant's history of violence and the prior sentencing break that he received, and to provide just punishment for the offense.

At the outset, a substantial term of incarceration is necessary to reflect the seriousness of Grant's conduct and to promote respect for the law.  For more than a year, Grant and his confederates in the Spearman DTO ran a three-block area of Harlem with impunity.  The crew sold crack cocaine in the street, passed money to Spearman, and enforced its territorial control with fists and guns.  With Grant's participation, the Spearman DTO sold vast quantities of crack cocaine, essentially transforming a residential area into an open-area drug market.  That is serious conduct, and it warrants a serious sentence.

Grant's participation in the Spearman DTO is particularly alarming because he was on State probation, have already received a significant sentencing break for a violent offense.  In January 2019, Grant assaulted his girlfriend, dragged her across the floor, and punched a door — all in the presence of his girlfriend's 15-year-old goddaughter.  (PSR ¶ 40.)  When the police arrived, Grant brandished a knife at the responding officer, forcing the officer to draw his weapon.  (PSR ¶ 40.)  Only then did Grant drop the knife.  (PSR ¶ 40.)  For this conduct, Grant received no jail time and instead five years of probation.  (PSR ¶ 40.)  Grant repaid the sentencing judge's leniency by joining the Spearman DTO.

Although these factors would ordinarily counsel towards a Guidelines sentence, the applicable Guidelines range of 121 to 151 months' imprisonment would, in this case, overstate the gravity of the offense.  As the Court may be aware, on June 22, 2021, the U.S. Department of Justice provided public testimony in support of the EQUAL Act, S.79.  This proposed legislation would eliminate the powder-to-cocaine base sentencing disparity in 21 U.S.C. §§ 841 and 960.  Although the Department supports elimination of the powder-to-cocaine base disparity, until legislation to that effect is passed, the current statutory and guidelines provisions remain in effect.

The amount of crack cocaine attributable to the Spearman DTO, of which Grant was a mid-level member, is between 2.8 kilograms and 8.4 kilograms.  For Grant, that yields a Guidelines range of 121 to 151 months' imprisonment. If the powder cocaine Guidelines were instead applied to the same amount of cocaine base, Grant's Guidelines sentencing range would drop by more than half:  51 to 63 months' imprisonment, with a statutory mandatory minimum term of 60 months' imprisonment. That is a significant difference.  The Court can and should, consistent with the law and current sentencing framework, consider the powder-to-cocaine base disparity in assessing the

Section 3553(a) factors. *See Kimbrough v. United States*, 552 U.S. 85, 106-08 (2007); *United States v. Cavera*, 550 F.3d 180, 191–92 (2d Cir. 2008) (en banc).

## V.      Conclusion

Based on consideration of the powder-to-cocaine base disparity and all the relevant factors under Section 3553(a), the Government believes a meaningful sentence below the current Guidelines range is appropriate.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Alexander Li
Ryan Finkel
Andrew Rohrbach
Assistant United States Attorneys
(212) 637-2265/-6612/-2345

cc:      David Bertan, Esq. (by *ECF*)